McATEE, Plaintiff-Appellant, v WESTERN & SOUTHERN LIFE INS. CO., Defendant-Appellee.

Ohio Appeals, First District, Hamilton County.

No. 6940.   Decided April 19, 1948.

402

John P. Bok, Cincinnati, for plaintiff-appellant.
Kyte, Conlan & Heekin, Cincinnati, for defendant-appellee.

## OPINION

By ROSS, J.:

The plaintiff appeals upon questions of law from two orders of the Court of Common Pleas of Hamilton County, entered on the 9th day of December, 1947. The case was tried to the court without a jury and resulted in a judgment for defendant. The only two orders of the trial court entered on that day were—(1) an entry overruling the plaintiff's motion for judgment non obstante veredicto, and (2) an entry overruling the plaintiff's motion for a new trial.

The Court, on the 22nd day of October, 1947, made and entered on the journal of the court a finding in favor of the defendant. Final judgment was entered in favor of the defendant, October 23rd, 1947. Motions for judgment non obstante veredicto and for new trial were filed October 25th, 1947. These motions were overruled on December 9th, 1947.

Summons was served on the defendant April 25th, 1947.

Sec. 11599-1 GC, requiring motion for judgment non obstante veredicto to be filed before judgment did not become effective until Septmber 27th, 1947.

The motion for judgment non obstante veredicto, under the practice in force at the time the action was commenced, was properly filed. The entry overruling that motion is a final order from which appeal on questions of law may be taken to the Court of Appeals. Cincinnati Goodwill Industries v Neuerman, 130 Oh St, 334; Hoffman, et al. v Knollman, et al., 135 Oh St, 170, 185; Massachusetts M. Life Ins. Co. v Hauk, 72 Oh Ap, 131.

It has been consistently held that the overruling of a motion for new trial, where no final judgment is entered, is not a final order or judgment from which an appeal to the Court of Appeals may be taken upon questions of law. Reliance Ins. Co. v. Pohlking, 27 Abs, 248; In Re Estate of Evans, 42 Abs, 7.

In 1945, the legislature amended §11578 GC, and as to actions filed after the effective date of such amendment, October 11, 1945, motions for new trial were addressed to the final judgment of the court when approved in writing and filed for journalization, rather than as before to the veredict or decision of the Court.

Where a motion for new trial is filed, usually the order overruling same will be the final entry in the action.

The Court of Appeals under the 1912 amendment of Article IV, Section 6, of the Ohio Constitution, was given jurisdiction to review only "judgments" of courts of record inferior to the Courts of Appeals. By judicial construction, this term "judgments" was extended to include such "final orders" as had the dignity of judgments at the time of the adoption of the 1912 amendment. Chandler & Taylor Co. v Southern Pacific Co., 104 Ohio St, 188; Pilgrim Distributing Corp., v Galsworthy, Inc., 148 Oh St, 567, 572.

By an amendment to Article IV, Section 6 of the Constitution of Ohio, the legislature was given full power to provide for the review of "judgments and final orders" of courts of record inferior to the Court of Appeals. This power was not as wide as that conferred by the Constitution of 1851 upon the Circuit Courts, which provided that the Circuit Courts should have "such appellate jurisdiction as may be provided by law." Even when the legislature acts it will be limited to provisions for review of "judgments and final orders." And the meaning of those terms as used in the amendment will be limited as before by the scope of their definition as understood and accepted at the time of the adoption of the amendment.

The legislature can no more designate an order final, which is not so in fact, than could it in the past, or now define an action a chancery case which did not meet the requirements specified by judicial construction. **Borton v Earhart, et al., 144 Oh St, 334.**

It becomes unimportant, therefore, to determine whether the legislature, as far as the jurisdiction of the Court of Appeals is concerned, has now attempted, or will in the future, attempt to clothe the action of the trial court in overruling a motion for new trial with the dignity of a final order, if such action does not constitute a final order **within the purview of the amendment.** However, it does become important to determine whether the action of the legislature after the 1944 Amendment of **Article IV, Section 6,** has changed the character of the action of the court in overruling a motion for new trial by reason of the new function of a motion for new trial in its attack upon a judgment, rather than a verdict or decision. **Sec. 11578 GC,** amended, effective October 11, 1945.

In effect today the motion is now an application to vacate a judgment as well as a motion for new trial.

In **Cox v Cox, 108 Oh St, 473,** the Supreme Court sustained the judgment of the Court of Appeals in affirming an order of the court of Common Pleas overruling a motion to vacate a judgment of such trial court. The question of the finality of the order of the trial court in overruling the motion to vacate was not discussed, but apparently the Supreme Court considered that the Court of Appeals had jurisdiction in appeal upon questions of law.

In **Cox v Cox, 104 Oh St, 611,** this matter was definitely considered, and there can be no doubt that the Supreme Court considered such action of the trial court in overruling a motion to vacate a final order.

See, also: **Chandler & Taylor Co. v Southern Pacific Co., 104 Oh St, 188,** supra, and **Baldwin, et al. v Lint, et al., 53 Oh Ap, 349.**

It must be concluded, therefore, that the overruling of a motion for new trial is a final order in that as to actions filed after October 11, 1945, the motion is essentially a motion to vacate a judgment as well as a motion for a new trial.

**Sec. 11576 GC,** as amended and effective October 11, 1945, provides in part:

"A final order, judgment or decree, shall be vacated, and a new trial granted by the trial court on the application of a party aggrieved, for any of the following causes affecting materially his substantial rights:"

Such being the case, the appeal was properly taken from the action of the court on both motions and the assignments of error applicable to such action must be here considered.

The action of the trial court on these motions will be considered as applicable to both motions.

The plaintiff in her petition states that she is the beneficiary of a certain policy of insurance issued by the defendant upon the life of William McAtee, who died on the 16th day of December, 1946, that the amount of such policy became due and payable to her but the defendant has refused to pay the amount of insurance due her, that all premiums due under the policy have been paid, and that all conditions required to be performed have been duly and fully executed.

In the answer of the defendant, for a first defense, defendant admitted the execution of the policy, the payment of the premiums, the amount of insurance, proof of claim, the death of the insured, demand and refusal of payment of the amount of the policy. Other allegations of the petition were denied.

For a second defense, the defendant alleged that the insured was not in sound health on the date of the delivery of the policy, as required by the terms thereof in order to fix liability upon the insurer, that upon discovery of such facts the premiums' paid by the insured were tendered plaintiff and refused, and the defendant is ready and, willing to pay such premiums, as the Court may find due.

A reply was filed which is essentially a general denial of the allegations of the answer, inconsistent with the allegations and claims of the plaintiff.

Upon the motion of the plaintiff for judgment non obstante, it must appear from the pleadings and evidence that the plaintiff is entitled to judgment as a matter of law, that is, giving the evidence of the defendant every reasonable construction in its favor, still the plaintiff should recover.

This contention of the plaintiff in this respect is predicated upon the claim that when the defendant introduced an application for the insurance in evidence, and it appeared in said application that the insured had stated that he was in sound health, and when it further appeared from the evidence that the defendant had failed to attach said application or a copy thereof to the policy delivered to the insured, that the defendant by virtue of the terms of §9389 GC, was thereafter forever precluded from denying such fact. An examination of the record shows the introduction of a copy of the application in evidence by defendant, and that no copy thereof was attached to the policy, or given the insured.

**Sec. 9389 GC,** provides:

"Every company doing business in this state shall return with, and as part of any policy issued by it, to any person taking such policy, a full and complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy. A company which neglects so to do, as long as it is in default for such copy, shall be estopped from denying the truth of any such application or other document. In case such company neglects for thirty days after demand made therefor, to furnish such copies, it shall be forever barred from setting up as a defense to any suit on the policy, any incorrectness or want of truth of such application or other document."

This section and its predecessor, R. S. 3623, have been considered several times by the courts of this State.

In **Lamarand v National Life & Accident Ins. Co., 58 Oh Ap, 415,** the third paragraph of the syllabus is:

"**Sec. 9389 GC,** which provides that a copy of each application affecting an insurance policy shall be furnished the insured, and that neglect or refusal to do so shall estop the insurer from denying the truth of any such application, does not prevent the insurer from defending on the ground that the insured was not in sound health at the date of application, but merely bars a defense on the ground of misrepresentation."

An examination of the opinion shows that this holding was obiter dicta. On page 420 of the opinion it is stated:

"The jury, on the disputed evidence before it, returned a general verdict for the plaintiff and, in answer to special interrogatories submitted to it, said that the insured did not have cancer on March 12, 1934, and did not have cancer prior to that date, and was in sound health on that date. Upon the whole record we cannot say that the verdict is against the manifest weight of the evidence, or that there is not sufficient evidence to sustain it. This finding disposes of the claim of the insurance company that its motions for a directed verdict should have been sustained.

"The appellee, though successful, complains of a matter which requires our attention. **Sec. 8389 GC,** provides as follows:"

The Court, on page 422 of the opinion cites the case of "Metropolitan Life Ins. Co. v Howle, supra." Two cases under this title are cited by the Court on page 420 of the opinion: —62 **Oh St, 204**, and 68 **Oh St, 614**. In the first case, R. S. 3623 is not considered, but, on the contrary, R. S. 3625. The first paragraph of the syllabus is:

"Section 3625, Revised Statutes, applies to false answers to interrogatories in the application for a life insurance policy, but does not apply to conditions in the policy itself."

Section 3625, Revised Statutes (now §9391 **GC**) provides:

"No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued upon such application, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is willfully false and was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, moreover, that the agent or company had no knowledge of the falsity or fraud of such answer."

Revised Statute 3623 is substantially the present §9389 **GC**.

In the second case, **Insurance Co. v Howle, 68 Oh St, 614**, the court construed the application of Revised Statute 3623. Paragraph 1 of the syllabus is:

"Where under Section ·3623, Revised Statutes, a full and complete copy of the application for insurance has not been returned with the policy, the insurance company while so in default is estopped from denying the truth of such application, but to make such estoppel available the facts constituting the estoppel must be plead by the plaintiff."

In the opinion, on page 617, it is stated:

"Upon the trial the defendant, insurance company, had a witness upon the stand with one of the applications for insurance in his hand, and was proceeding to prove that the answers to the several questions therein were made by said Sarah Howle, and that said answers were false, when counsel for plaintiff below objected on the ground that said defendant had failed to prove in open court that it had returned with

said policy a complete copy of said application as required by Section 3628, Revised Statutes. The court sustained the objection, and excluded both of said applications, to which the defendant excepted.

\*　　　\*　　　\*　　　\*　　　\*

"Under the provisions of this section a failure to return a full and complete copy of the application with the policy, works an estoppel, so long as the company shall be in default, and in case of neglect to furnish such copy for thirty days after demand made therefor, such neglect shall be a bar to any and all defenses growing out of such applications and the answers to questions therein contained. The bar here provided for is a permanent estoppel. To make an estoppel or such bar available the facts constituting the same must be plead in all cases where the same is practicable.

"In this case the plaintiff below should have plead the estoppel in his reply, but instead of so doing he contended himself with a general denial, and thereby denied the existence of such applications. As the applications in this case in fact existed, he should have admitted that fact in his reply, and avoided their effect by pleading the failure to return copies, and thereby made the estoppel available. The defendant company was not required in its answer to say whether a full and complete copy of the application had been returned with each policy or not. The denial of the existence of the applications might be taken as an argumentative denial of their return with the policies, but pleadings should be direct and not argumentative. As the pleadings stood the court erred in excluding the evidence."

It appears from a statement of the case at page 615 that as its second defense the insurer stated that the policies were issued because of false warranties in the application, and that the plaintiff filed only a general denial in the reply.

In the instant case, the application is not mentioned by either party. The defendant insurer defended upon the ground that the insured was not in sound health at the time such policy was delivered. The application was first brought into the case by the defendant, and was admitted over the objection of the plaintiff.

It would seem at first that the rule in the case of **Metropolitan Life Ins. Co. v Howle, 68 Oh St, 614,** would apply, but a different situation is presented in the instant case. In the Howle case, the plaintiff was advised of the existence of an application by the insured, because the

existence, and force of such application was alleged by the defendant insurer in the answer. In the instant case, as far as anything in the pleadings or evidence shows, the first knowledge the beneficiary (who is the plaintiff) had of an application having been signed, executed, or delivered by her insured was when the defendant introduced such application in evidence. How can the plaintiff be required to plead facts constituting an estoppel of which she may be, and as far as this record shows, was wholly ignorant.

Such being the case, if it appears that the plaintiff is not made aware of the existence of an application either in pleading or otherwise until such application is introduced by defendant in evidence, plaintiff may invoke the estoppel provisions of §9389 GC, and the defendant is estopped to deny the truth of any statement contained in such application.

The dilemma of the defendant in the instant case is apparent. It needed the application in order to furnish a waiver, but when it introduced the application in evidence, the provisions of §9389 GC, took effect and the **application** having stated the insured was in sound health at the time the **application** was signed the insurer cannot deny this fact. The application was signed August 20th, 1946. The policy became effective August 26th, 1946.

The insured died on December 16th, 1946. The cause of death was cerebral hemorrhage. There is competent evidence that the deceased consulted a physician June 15, 1946, who recommended that he obtain an electrocardiagram, because he found pain in the patient's chest in the region of the heart. After the report was received, the physician told the insured he had "a condition suggestive of cardio-vascular disease, suggestive of it" and prescribed sedative and rest. This "disease" mentioned indicates an impairment of the veins of the heart. The physician who made the cardiagram, June 16, 1946, testified:

"Q. As the result of your examination of Mr. McAtee and as the result of the electro-cardiagram, what did you find his condition to be at that time?

"A. At that time my conclusion was that he had—

(Question objected to by counsel for plaintiff; the objection was overruled and counsel for plaintiff excepted.)

"THE COURT: All these questions of the doctor are objected to and overruled for the reason that I stated.

"A. My conclusions were that the evidence showed the existence of hyper-tension, systolic and diastolic, high blood

pressure with some manifestations on the part of the blood vessels to the heart that we speak of as anginal pattern.

"Q. Is that a serious type of disturbance?

"A. It is a disease of circulation through the blood vessels of the heart and would necessarily have serious effects.

"Q. Did you send Mr. McAtee back to Dr. Cavanaugh?

"A. I referred the patient back."

Now we are confronted with the positive fact that on August 20, 1946, the insured was in sound health. This is the effect of the estoppel in the application. There is no evidence except that just mentioned that after that date or on August 26th, 1946, the insured was not in sound health. It may be argued that the disease from which the physicians stated the insured was suffering could not be cured, and that the cause of the death was directly attributable thereto, and that he must have still been suffering from it on August 26th, 1946. This ignores the definite fact that the insurer is estopped to deny that the insured was in **sound health** on August 20th, 1946.

There being no evidence that after the date of the application or that on the date the policy became effective the insured was not in sound health, the plaintiff was entitled to judgment for the amount of the policy, the only defense being that the insured was not in sound health on the day the policy became effective.

Such being the case, the motion for judgment non obstante veredicto should have been granted, and this court, therefore, enters the judgment which the trial court should have rendered, and remands the case to the Court of Common Pleas of Hamilton County for execution of this judgment.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.