WOLFSON ET AL., D. B. A. WOLFSON REALTY CO., APPELLANTS, *v.* HORN, APPELLEE.

(No. 7728—Decided May 18, 1953.)

*Messrs. Rosen & Rosen,* for appellants.
*Mr. Allen Brown,* for appellee.

MATTHEWS, P. J. This is an appeal of an action commenced in the Municipal Court of Cincinnati to re-

cover judgment for services rendered by the plaintiff as a real estate broker for and on behalf of the defendant. The Municipal Court rendered judgment for the plaintiff. On appeal to the Common Pleas Court, the judgment was reversed and final judgment rendered for the defendant. This appeal on questions of law is from that judgment.

A preliminary question is presented as to the sufficiency of the notice of appeal from the Municipal Court to the Common Pleas Court. It was recited in the notice of appeal that the appeal was "from the final order and judgment rendered herein on the 4th day of April, 1952." A reference to the docket discloses that the judgment was rendered on March 3, 1952, and that April 4, 1952, was the date upon which a motion for a new trial was overruled. It is urged that this is an attempt to appeal from the order overruling the motion for a new trial, that such an order is not a final order, and that, therefore, no appeal can be taken therefrom.

We find the objection untenable for two reasons.

(1) An order overruling a motion for a new trial is an appealable order at the present time. In *Jolley* v. *Martin Brothers Box Co.,* 158 Ohio St., 416, 109 N. E. (2d), 652, the Supreme Court, at pages 427 and 428, quoting from the Court of Appeals opinion, said:

" '* * * Prior to recent amendments of the Code it was held that an order overruling a motion for new trial was not a final order from which an appeal may be taken. Under the amended sections of the Code motion for new trial is directed to the judgment as well as the verdict. *State, ex rel. Simons,* v. *Kiser,* 88 Ohio App., 181, 96 N. E. (2d), 306; *Liebrand* v. *Butler,* 88 Ohio App., 185, 97 N. E. (2d), 80. See Sections 11575, 11576 and 11578, General Code, as amended effective October 11, 1945. In *McAtee* v. *Western & Southern Life Ins. Co.,* 82 Ohio App., 131, 81 N. E.

(2d), 225, the court held that in an action commenced after October 11, 1945, an order overruling a motion for new trial is a final order. This same ruling has been followed in *Williams* v. *Martin,* 82 Ohio App., 395, 81 N. E. (2d), 806; *Caswell* v. *Lermann,* 85 Ohio App., 200, 88 N. E. (2d), 405; *Miller* v. *Miller,* 56 Ohio Law Abs., 280, 91 N. E. (2d), 804. * * * This action being commenced in 1947, the order of the court overruling the motion to set aside the judgment and granting a new trial was a final order.' "

And on page 430, *ibid.,* speaking for itself, the court said:

"This court is in agreement with the Court of Appeals in holding that an order of a trial court overruling a motion for judgment notwithstanding the verdict, if perfected as a final order, and a subsequent order by the same court in the same action overruling a motion for a new trial are subject to separate appeals which may be prosecuted in the sequence of such orders, and that appellant has a right to pursue successively, if necessary, but not concurrently, both remedies."

(2) No objection was made in the Common Pleas Court to that court exercising jurisdiction under this notice of appeal. It is raised for the first time in this court. Had an objection been made in the Common Pleas Court, the defect, if any, could have been cured by amendment. It clearly comes too late when raised for the first time on appeal to this court. 2 Ohio Jurisprudence, 1684, Section 897.

The defendant owned real estate in Elmwood and was also a duly licensed real estate broker. Associated with him as a licensed salesman was Jack Mutchnik. The defendant authorized Mutchnik to secure an offer for his Elmwood real estate. Mutchnik sought the plaintiff's services in obtaining a purchaser. He solicited Thelma Kaplan and Gorey Kaplan to make

an offer, which they did. The plaintiff prepared an offer of $45,000 in triplicate on the standard printed form adopted by The Cincinnati Real Estate Board, which offer was signed by the Kaplans. This offer was presented to the defendant who objected to the price. Negotiations as to price and agent's commissions followed. During these negotiations, the price was changed by cancelling the original offer of $45,-000, which was typewritten, and inserting in longhand $47,500, and then at a later date again changed by cancelling the figure $47,500 and inserting $46,000. At some point, the defendant and his wife signed the acceptance. This probably occurred when the writing showed that the offer was $47,500. When the purchase price was changed from $47,500 to $46,000, it was presented to the Kaplans and they agreed to the change. A payment of $2,500 on the purchase price was made by check payable to the plaintiff and defendant jointly, and on defendant's demand, the plaintiff endorsed and delivered the check to defendant, who deposited it in his bank account.

There is no doubt that the defendant became bound to sell his real estate to the Kaplans, unless his wife was not bound as claimed, and that that fact vitiated the entire transaction. In fact, he admits it and, in fact, later paid them $250 for his release.

The defendant and his wife testified that she signed when the purchase price was $47,500, and that she never consented to its reduction to $46,000. The plaintiff and defendant's salesman, Mutchnik, testified that Mrs. Horn, in their presence, told the defendant that she left the matter of the price for his determination. The defendant's subsequent conduct supports their testimony. He delivered the contract to the plaintiff with Mrs. Horn's signature appended, took the payment of $2,500, and deposited it in his bank account. We believe the evidence that Mrs. Horn authorized her

husband to bind her to this contract far outweighs the evidence to the contrary.

However, it is upon this state of the record that the defendant contends that the plaintiff is entitled to no commission, because, as one of the ostensible sellers was not bound, the buyers were not bound, and, therefore, he had not negotiated a binding contract by a willing and able purchaser, and, furthermore, as the wife refused to join in the deed and was not bound by the contract, a conveyance free of her right could not be specifically enforced. It should be said that the purchasers never raised this question. It should be noted too that this offer was not made to Harold R. Horn and Betty Horn by name. It was addressed to the "owner" represented by the plaintiff. It is admitted that the defendant was the owner and that the only interest his wife had was an inchoate right of dower.

But before the defendant could be heard to make this contention, it was necessary that it be found as a matter of fact that the wife was not bound by the contract. There was no such finding. On the contrary, as the Municipal Court found generally for the plaintiff, we must assume that all facts necessary to support that conclusion were so found. And, as already noted, such a finding is abundantly supported by the evidence in the record.

We, therefore, hold that, as under the finding of the trial court the wife was bound by the contract and could have been compelled to specifically perform by releasing or by being barred of her dower right, it is unnecessary to consider what effect her failure or refusal to join in the contract or her unauthorized signature thereto would have had upon the obligation of the purchaser or upon the defendant's duty to pay a commission to the plaintiff.

As the written offer was prepared and submitted by the plaintiff, it contained the usual printed provision that the seller would pay the commission established by The Cincinnati Real Estate Board. This provision was never cancelled, but it is admitted that in the negotiations relating to the price the subject was discussed and that, to induce the defendant to agree to take $46,000 for the property, the plaintiff agreed to reduce his share of the commission to $825. The contract bears the date of October 8, 1951. In a letter dated October 9, 1951, from the plaintiff to the defendant, the plaintiff stated: "I agree to accept eight hundred and twenty-five dollars as my broker's share of the commission in the event *the sale is made* at $46,000." This letter was sent to the defendant on his insistence, so that there would be no uncertainty on the subject of the commission. The defendant retained this letter and made no objection as to its not stating the agreement correctly. The record leaves no doubt that this reduction of plaintiff's share of the commission was agreed to before the Kaplans agreed to raise their offer to $46,000. It appears also that the defendant retained the original and one copy of the contract and gave the buyers one copy, and that when they released him from his obligation, their copy was delivered to him. He produced all three copies at the trial. As produced, these contracts contained the provision following the printed provision relating to the commission, that "no commission due or payable until transfer of deed." It is admitted that the defendant wrote it. He testified that he wrote it after he had told the plaintiff, and that plaintiff had agreed to it. The plaintiff denied that any such conversation took place and denied that the contract contained any such provision. Mutchnik corroborated the defendant's testimony on this subject.

The retention of the plaintiff's letter without protest was an implied admission that it correctly stated the agreement between the parties on the subject of commission for effecting the sale. The probative effect of this letter is increased by the fact that, according to the defendant's own testimony, he requested the plaintiff to sign the statement that he would take $825 in full for his commission. If the plaintiff was to receive no commission in the event no deed was delivered, even though it resulted through the fault of the defendant, it would seem that the natural place for such a limitation upon his right would have been in the letter, the only purpose of which was to limit the plaintiff's right to a commission.

We, therefore, conclude that there was certainly substantial evidence that the provision, "no commission due or payable until transfer of deed," was not a part of the contract at the time plaintiff signed, and that he never agreed to that limitation upon his right.

The Municipal Court was the sole trier of the issues of fact in this case. The appeal to the Common Pleas Court was and the appeal to this court is on questions of law only. Neither court has jurisdiction to retry the facts.

It is true that on appeal on questions of law, the appellate court has jurisdiction to reverse the judgment when it finds that it is manifestly against the .weight of the evidence, but in determining that question, the Common Pleas Court is governed by the rule of law that every reasonable presumption must be indulged by it in favor of the validity and regularity of the judgment under review.

As is said in 2 Ohio Jurisprudence, 1152, Section 634:

"* * * if the evidence is susceptible of more than one

construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.''

There are many valid reasons for this rule. In *Spangler* v. *Brown,* 26 Ohio St., 389, at 393, this rule is placed in the category of law.

This case involves successive appeals on questions of law, in which the intermediate court reached a conclusion on the facts contrary to that reached by the trial court. It presents to this court the question of the rule governing this court on appeal from the judgment of reversal by the intermediate court.

In 2 Ohio Jurisprudence, 1150, Section 623, it is said on this subject:

''The rules relating to reversal on the weight of the evidence have special application in a case of succesive appeals on questions of law, as where a case is taken from a Municipal Court to the Common Pleas Court, and thence to a Court of Appeals, on such questions. In such a case, where the intermediate appellate court has reversed the judgment of the trial court on the weight of the evidence, the higher reviewing court will reverse the intermediate court and restore and affirm the judgment of the trial court if it determines that there was some evidence which was competent and credible in the record to sustain every element of the party who won in the trial court or if it finds that there was a conflict in the evidence, or, generally speaking, if it concludes that the judgment of the trial court was not against the manifest weight of the evidence, even though upon its previous review and examination of the record the intermediate court had reached a contrary conclusion. At least one Court of Appeals, however, has held that where it reviews a judgment of the Common Pleas Court which reversed

a judgment of the Municipal Court as being against the weight of the evidence and remanded the case for new trial, it would not reverse such intermediate judgment of the Common Pleas Court although the testimony was conflicting in various respects and different inferences might be drawn from such conflict, although in a still later case, the same Court of Appeals, in deciding a case originating in the same Municipal Court which had been reversed by the same Common Pleas Court, held, without mentioning its earlier decision, that a judgment of the Municipal Court as trial court would be affirmed and that of the intermediate reviewing court would be reversed where the higher reviewing court was unable to say that there was not sufficient proof in the directly conflicting testimony to sustain the conclusions of the trial court.''

This text is based on three opinions by Courts of Appeals in one of which (*Duberstein* v. *Globe Tool & Engine Co.*, 16 Ohio Law Abs., 350) some importance seems to be placed on the distinction between a reversal with a remand for a new trial and a reversal with a direction for final judgment for the appellant. The distinction is unimportant here, because final judgment was directed.

The Court of Common Pleas reached the conclusion that the defendant's wife had not signed the modified contract, and that, as the purchasers supposed that they were making a contract with both Mr. and Mrs. Horn, no contract resulted, and, therefore, that the plaintiff had not produced a buyer who was ready, willing, and able to buy. As we have already pointed out, the Municipal Court could have very reasonably concluded that Mrs. Horn authorized her husband, in his discretion, to deliver this offer signed by her. If she did, she, of course, would be bound by the contract. If she did not, the defendant Horn, having de-

livered the written offer to the buyer, is in no position to take advantage of his own wrong. It is said that the plaintiff knew the defendant's wife had declared that she would not join in a sale for less than $47,500, and owed a duty to inform the buyer. However, there is no evidence that he knew she had not authorized the defendant to deliver the modified offer with her signature appended, or that he was charged with the duty of so informing the buyer. The defendant's agent, Mutchnik, was present at all times.

Furthermore, the buyers did not repudiate the contract when informed that the defendant's wife claimed she was not bound. On the contrary, they insisted that defendant was bound, and only desisted when defendant secured his release by paying them $250.

Defendant's counsel cites certain cases, of which *Pfanz* v. *Humburg,* 82 Ohio St., 1, 91 N. E., 863, 29 L. R. A. (N. S.), 533, is typical. We regard the cited cases as inapplicable, for the reason that in each of those cases no binding contract was effected, and the broker's employer was free to withdraw from the transaction. The brokers were employed to sell, and no sale or contract to sell was consummated.

For these reasons, the judgment of the Common Pleas Court is reversed, and that of the Municipal Court of Cincinnati is affirmed.

*Judgment reversed.*

MATTHEWS, P. J., ROSS and HILDEBRANT, JJ., concur.